Madam Clerk, call the case. 3-0-9-0-7-3-5 Manito Machinery, Inc. et al. Appellant Richard Stegall v. Bank One et al. Appellee Alexander Marks and Craig Unreck Counsel, you may proceed. Justice Carter, O'Brien, I saw you in the trial court a while back and it's the first time I've been here. I represent Deborah May and Manito Machinery, it's a town south of Pekin, Enterprises Machinery, Inc. Corporation. It's an action for conversion of personal property. Bank One obtained control of that property by foreclosure of a mortgage on the real estate and there are two classes of property involved, Deborah May's and the personal effects, but the point driving the case is I'm not into theoretical things, what are personal effects worth or something, but the Manito Machinery business had 57,000 customers and transactions in buying and selling machine tools listed on its computers, which were taken by Bank One and ultimately destroyed and it had done a $1.3 million business the year before the foreclosure, foreclosure related to the man diversifying when he shouldn't have been. You had an underlying business, it was very valuable. It's basically the downside and kind of a forebringer because it's an early case about discomputerization. Bank One sends this out to its lawyers, Cadillus, on a mortgage they don't own. There's no written assignment for the statute of frauds. April 18, 2000, Cadillus files the foreclosure action. The sheriff of Mason County, Havana, small county, knew that Mays, not found, lives now living in Milford, Illinois. Then the Cadillus lawyer files a false affidavit and publication, never tries service, says that due diligence they couldn't be found. No returns in the record in the appendix. Then they get the interim foreclosure order July 12, 2000. Interestingly, on the other side, for Bank One's knowledge, on June 7, they repossessed two automobiles in Milford, Illinois from the Mays, so certainly they know where they are. The foreclosure time goes through. The final order of sale is January 3, 2001, becomes final February 3, 2001. They take possession, the sheriff, and turn it over to the realtor to sell it. Well, Ralph May, who's the husband of Deborah May, finally learns of it. There was never any notice. All the notices are sent to the address of the real estate, where they don't live. They live in Milford. And he makes... He talks to the real estate company, give us a personal property, well, you'll have to talk to lawyers. He calls Cadillus, it's in the complaint, alleged. Specifically, he talks to Kate McKay there and says, want my property back. She asks the supervisor. Supervisor says, tell him to get a lawyer. He asks three more times, April 18, 2001, April 19, 2001, October 30, 2001. So we bring the action for conversion. The other business that caused the foreclosure was an intervening bankruptcy, which explains the delay of getting the case ready. And Judge Vesta granted the defendant's motion to dismiss the conversion claims. The claims I'm asserting are by Debra May and Manitou Machinery. Well, we start with, if you go back to the basics, mortgage doesn't give you title to personal property that are not fixtures. Clearly, computers and office furniture are not fixtures, nor are personal effects. Now, I thought that was self-apparent, but they raised, my adversaries raised it, so in reply, I found a 1940 Illinois case, Duligis, and then a Supreme Court of Connecticut case that says the obvious. You don't own the property. You take over the foreclosed real estate. You have a duty to preserve it, so the owner can come get it and let them know it's there. And when you don't, it's conversion. There is an argument that somehow this property was abandoned. Well, how can it be abandoned? Four demands for their return. So it certainly wasn't abandoned. The other two arguments are by way of defense. Judicial estoppel, they say that there's an omission in reference to this action in Debra May's bankruptcy petition. Well, I filed a motion for relief from stay in Debra May's bankruptcy so this action could proceed. It was noticed, sent out to everybody, the clerk in the bankruptcy court, and Judge Fines, of course, grants it. So there was notice, and not surprisingly, given the details that are involved in bankruptcy, you may have ended up, of course, as a matter of bankruptcy procedure. You don't even need leave of court to amend your schedules because you can imagine what the larger ones are like or any personal bankruptcy. If you find something else, just file it, and it's considered amended. But there's another problem with the judicial estoppel claim. The claim is that the statement not saying this existed, well, of course, she did say it existed with the motion by the amendment, and is inconsistent with pursuing this lawsuit. Well, the problem is you have to win twice on judicial estoppel for it even to be involved, and like its cousins, race, judicata, and collateral estoppel, you have to have a final judgment. There's never a final judgment involuntarily dismissed. Bankruptcy courts, like the Illinois courts, a voluntary dismissal makes the action annulled. Again, not surprising. If people don't want to pursue the bankruptcy, fine. Well, Bank One and Cadillus, the lawyers, say that there's some policy here that's offended because creditors were subjected to the automatic stay. They're the only ones who've ever mentioned that policy. The bankruptcy courts, it certainly doesn't view it that way. And not surprisingly, the creditors go back to their collection remedies, anything they've taken, and security they've gotten. There's no judicial estoppel argument that has found that, is there? No, no. It's never been considered. It's always a requirement in judicial estoppel that you're successful in arguing one thing, and then you attempt to argue something else in a later proceeding. Of course. Is that fundamental? Yes, it's fundamental. And she didn't win anything. I mean, if it's a dismissal without prejudice, she didn't win, and she lost if it's a dismissal with prejudice, so she just didn't get anything out of it. So you're right. There's no case that ever says, and in fact, we had to look. We found a case where they argued some justice, the U.S. attorney said this wasn't a significant matter in closing argument, and then in sentencing he says he wanted to increase sentence because it was a significant matter. They said, well, you know, he didn't win twice. There's no final judgment. Yeah, I cited a bankruptcy case too, but there's no court that's ever recognized that statements made before a final judgment or when you don't win have any effect. Now, in this case, there was a motion for grant. There were two motions dismissed, one's a 615, one's a 619. Right. So they said they granted the defendant's motions to dismiss. Right. But there was a question of abandonment. Well, they raised it, but with four times demands, as soon as he had notice, I don't see how on his pleading she can even consider abandonment because what more could he do? Well, they say he latches to five times he should have asked, and five times they might have given it to him. I mean, it's his property. He's the owner. The allegations must be set to disprove, by the way. What was specifically the trial judge's affirmative matter to grant the 619? Well, it would be judicial estoppel, and the other one raised was race judicata in the mortgage facilities. So you're just taking that from what was raised in the— Yeah, yeah. He never commented. He just said the arguments have merit. But there's nothing else in the record about the specifics. No. I had to take what the motions were. It was a complicated complaint, not surprising. I did need to lead to amend. He said on the second time nothing's changed. Judge Bassburg was right, but I did have gaps in my complaint, not surprisingly, with all these repeating things as to what against Cadellis. So I filled that in, and we affirmed it, and we took it up. So the only three possibilities are those, and, of course, race judicata. Deborah May and Manitou are clairvoyant. You can't raise conversion of personal property until it occurs, and it can't occur in a foreclosure action. And it would be an interesting cause of action to file— leave to file a complaint for a possible foreclosure when they— for a possible conversion when they take possession of the real estate because they may take some personal property. So those were the only defenses below. So that's the only thing we could go on. And it was a straight conversion claim. Classy conversion. There's nothing in an earlier motion to clarify the situation. No. No. That's all of record, and that's what I based the brief on, is does it stay the clause of action for conversion, and do the affirmative matters or judicial estoppel increase judicata? Thank you. If there's no further questions. Counsel, you may proceed. Thank you, Justices. Counsel, may it please the Court, my name is Alex Marks, and I represent J.P. Morgan Chase, successor in interest to Bank One, who was the defendant in the original action that was filed. I will be addressing the Section 2615 portion of the Court's ruling why plaintiffs have failed to properly plead conversion. My co-defense counsel will be addressing the 2619 aspects of the motion. Before I begin as to why the plaintiffs failed to properly plead conversion, I want to make clear what order is before this Court for review, and it is simply whether or not a conversion claim was properly pled. Throughout counsel's brief and the arguments he made before you, there were several allegations made that the bank did this, the attorneys didn't do this. The bottom line is the judgment of foreclosure was entered in July of 2000, and the order for granting the right of possession to Bank One was on January 3, 2001. Those orders were not appealed from. They're not the subject of this Court's review, and the Court is left to assume that everything was properly done in the foreclosure judgment action and the order obtaining the right of possession, and that would include any notices and proper notices as required under the law to the plaintiffs. Now, as for the conversion action, which is before this Court, we all know there's four simple elements to an act for conversion that you must plead. You have to plead that you have, one, a right to the property, two, you have a right to immediate possession of the property, three, that you were deprived of that right by the unauthorized and wrongful assumption of control or possession over the property, and four, that a timely demand was made for the return of the property. And here, as Judge Vesva found below us, plaintiffs have not and cannot plead the third and fourth elements of conversion. First, let's begin. My client did not take unauthorized and wrongful assumption of control over the property. In this case, and as plaintiffs' complaint admits, there was a judgment of foreclosure. There was an order of possession, and that order gave Bank One the right to take possession of the plaintiff's home. The real estate? Of the real estate, correct, Your Honor. So how did you get the personal property then? We didn't, Your Honor. We didn't take possession of the personal property. What simply happened is the order granted us right to possession of the real estate. We acknowledge the order doesn't grant possession to the personal property, nor did we ever take the personal property. What happened in this case is we obtained a right to possession of the property, of the real property. The order didn't say you have the right to possession of the real property, but don't touch the couch that was left behind. You have to leave that alone. Now, once we take possession of the real property, there's absolutely no duty under Illinois law for my client to preserve the personal property that was left behind. I cited to Dargis v. Paradise Park, where the 2nd District looked at this very issue in the context of a negligence action. And the court in that case stated several jurisdictions have held that a landlord assumes no duty to care for the personal property the former tenant has left behind when the landlord exercises control over the premises after the tenancy has been terminated by a lawful eviction. The court went on to state there's only two ways you can invoke some sort of a duty to care for personal property left behind after you take possession of the real property. And the court stated, one, if you choose to care for the property. So if bank one in this case had said, well, let's take all these possessions left behind, we'll put them in a storage locker and see if they come claim them, then we are undertaking some sort of a duty. And two, we would not be able to, or we would have some sort of a duty for the personal property if the exercise of control over that property, meaning the real property, stemmed from an unlawful eviction. And certainly here, we don't have an unlawful eviction. So your position legally is as soon as you get an order, possession, and a foreclosure action, any personal property inside the building is fair game? I think, essentially, yes, Your Honor. I think that's the position you have taken. It's important to look at this- That's the position that the law takes? It is, Your Honor. You don't think there's a reasonableness factor implied? There's a reasonableness factor implied up until the point we have the right to possession. Certainly the order granting us the right to possession, again, didn't say you have to take care of the belongings left behind. And certainly there's no allegation that- But aren't we talking about abandonment here too? I mean, isn't that part of the issue? There's a two-prong issue you have to look at here first. One, when we take possession of the real property, do we have any duty to preserve the property? If you or I, Your Honor, purchased a home, let's say in Ottawa, and the day we go in to move in, someone left behind a used TV, certainly we wouldn't have to track down that person to find the TV or store the TV, or we wouldn't have to leave it on the new living room table that we brought in until the person comes and claims it. At that point, we have the right to possession of the property. Now, we didn't take to answer your question earlier. Wait a minute. So if you have a building now, a large building, and there are different renters in the building, and you have a right to possession of the property now because there's a mortgage foreclosure, you mean all the personal property in that building, that's fair game for you then? What we're saying is- Even if it's owned by somebody else? If that person no longer has a right to possession of the premises, then at that point we're entitled to be able to take control of the premises and make the use that we would like to determine. Again, I think it's important here to look at some level of personal responsibility from the standpoint that the plaintiffs here were given a notice or they were served with a summons for the foreclosure action. They were given notice for the foreclosure judgment. They were given notice of the order of possession. They had a period of 14 or 15 months- Was that a notice to possess the personal property? We didn't possess the personal property, Your Honor, and certainly the Illinois case law has cited numerous jurisdictions where it says at that point we have the right to, in essence, clean out the property. I'll cite Forteck v. Dunteman, which in turn is citing Roe. Lenders' conduct was justified in disposing of the property where the building has been vacant for a long time, or was vacant for a long time, and it was common experience for a lender to find broken, dilapidated, or otherwise worthless furniture, tools, or equipment apparently abandoned by the former occupant. Same situation, and certainly we know anytime that there's an eviction, a lot of times the sheriff will come in and move out the belongings. At the time we had the right to take possession of the property, and the order granting possession, we have the ability to not act as an owner of the property, but to move the property. And here we didn't exercise ownership over any of the personal property. We just moved it. Well, moved it where? To a garbage dump. It could have been a garbage dump. It could have been in the front lawn. At that point it's really immaterial under Illinois law because of the order granting the right of possession. Look, the plaintiffs at this point had not lived in the home for 18 months, and by the time they had been served with the summons there were 14 or 15 months where they could have come and claimed the property. There was nothing prohibiting them. Even after the order of possession was granted on January- Didn't we leave the demand for the property? Well, that was the second point I was getting to, Your Honor. Not only are they unable to plead prong three of conversion, that we took unauthorized possession of control of the property, which we didn't. We simply took control of the real property. They also can't plead the fourth prong of conversion, and that's that a timely demand was made. Counsel said, well, he's the owner of the property, and he made the demand in April and October. Well, at that point he may have owned the personal property, but he certainly wasn't the owner of the real property. At the time he made the demand- He didn't demand the real property, he just demanded the personal property. What was the timeline here? That's what I was about to illustrate, Your Honor. January 3rd, 2001, an order of possession was granted. Okay. February 3rd, 2001, Bank One takes possession, and presumably at that point, maybe day one, they send in cleaners and painters, and they clean out the property, and they get it ready to sell to somebody else. Not until April and October of 2001. So the first demand was made in April of 2001. That was three months after the order of possession, and that was 60 days after my client actually took possession. At that point, a demand is finally made, and we've cited case law where you can't have a conversion action if the person allegedly converting the property didn't have possession of the property at the time the demand was made. And certainly here, there was no duty to preserve the property, and presumably at the time the demand was made in April, the property was already long cleared out of the premises. Now, I sense that you say certainly, Your Honor. It's not in the record, Your Honor. But at this point, again, it's immaterial. Whether it was the first day or two years later, there's been no allegation that my client still has the property. Certainly it would be a different situation if we'd taken control of the real property, we're holding the personal property, and we're attempting to sell it or we're claiming some value for it. That's not what happened in this case, and there's been no allegation in the complaint that my client did do something like that. So all that this court needs to look at is, was the demand timely made? And it wasn't. And nor could it be alleged that there was a timely demand for the return of the property because we'd already possessed the property by the time, pursuant to lawful order, by the time the demand was made. And one thing that's important- You got the order of possessing the property, the real estate. That personal property was located in the building. Certainly, Your Honor. Counselors, one minute. And just to wrap up real quick, there was a question about abandonment. And again, we've cited some case law saying that it's a common experience to find things left behind. Certainly also in this case, while we've argued there's no duty to preserve the property, even if there was a duty, you could make the argument that duty was to Deborah May. Certainly, my client, who was not privy of contract with Manitou Machinery, would not have known that there was some sort of a company's database of thousands of employee names stored in the premises. Again, I think it's important- Are there any assumptions made when you find a bunch of computers from some ongoing business? The property that you take, you can just sort of ignore all that? You don't have to ignore it, but you certainly don't have to keep the property in the home, and you don't need to store it. There's no case law, and certainly there's been no case law cited by plaintiff that there's a duty to preserve that property or store it or hold on to it in the home until they come back and claim it. These plaintiffs had ample opportunity to come and take their property, and they simply didn't get their stuff. By the time- Mr. McQuinn, you had said earlier that there was service of summons. I thought the summons came back and they were published. Certainly, Your Honor, there was service by publication, but again, the law allows for service by publication. Oh, I understand that, but you had said that. I misspoke. There was notice of the summons by publication, not personal service. But either way, the law considers that to be proper service, and again, the judgment of foreclosure is not before this court. The court's left to assume it was a proper judgment, foreclosure judgment order. You can go ahead with your statement. I just simply thought that I misunderstood. I misspoke, Your Honor. There was information where these other people were located, right? You had information where- That's the allegation that's been made. I don't think it's pertinent for this court or relevant because that order is not before you, but I will note just to reassure the justice, one of the arguments that's been made is, oh, well, they knew where to repossess a car. That was a separate Chase entity that repossessed the car. J.P. Morgan Chase was the entity that, or Bank One, formerly Bank One, was an entity that foreclosed upon the house. There's no guarantee that a separate, wholly separate company and another company was foreclosing would have somehow communicated that knowledge. But again, that's irrelevant because the judgment, the foreclosure judgment is not before this court. That's his time. So I would request that the order of the circuit court be affirmed. My co-counsel will take on the rest of the arguments. Thank you, Your Honors. Good afternoon. My name is Craig Unrath. I think we need to take a step back here for just a moment. We have a lot of legal theories flying around. June 1999, Deborah May takes out a $200,000 mortgage, makes three payments. Next month, she moves out of town, leaving no forwarding address and a little bit of office equipment and a computer that she apparently values at somewhere between a half a million all the way up to $1.1 million. Now, right off the bat, just looking at this at face value, what did she think was going to happen with that office furniture and that computer? She left town without a forwarding address and stopped making payments on her mortgage. Where I come from, we call that giving it back to the bank. And that's just what happened here. She abandoned the home. She abandoned the mortgage. She abandoned the personal property within. So when Counselor, with respect, said that we can't even consider abandonment, well, I take issue with that right off the bat. Is that a question of fact or do you just find that as a matter of law? Oh, I see that as a matter of law. Is it normally a question of fact? No, not in a case like this. No, there is no duty to abandon, to maintain that property or protect it for them. They have walked away from it. The property in the building interferes with possession of the property. Now, if they've left an old sofa, moth-eaten sofa in there, we have to get that sofa out of there. Otherwise, the home is valueless because nobody's going to buy that home with somebody else's sofa in there. Legally, the first day you have the right to possess the real estate, okay, in the Foreclosure Act, can you, under your theory, destroy or get rid of any personal property in that building? I see it done. So can you legally do that? Yes, absolutely. So the people who own personal property in a building that's being foreclosed have no right of any reasonable notice, no right to any reasonable time to acquire their property. Legally, the foreclosing agent, the bank, can go in and take any third party's property and do what they want with it because they don't have to protect it. It's actually a two-step process, Your Honor. There's a foreclosure on the mortgage that is followed by a court order giving you right to possession of the property. At that point, yes, Your Honor, the sheriff can come in and move your belongings to the curb, and it does happen. It happens today. The plaintiff- A non-party to the Foreclosure Act. Pardon me? A tenant, a non-party to the Foreclosure Act. A tenant would certainly-I'm not quite sure I understand your question, Your Honor. If you're a tenant in a building that's being foreclosed and you have a personal property there, legally then they can just take all your property? That raises an entirely different point, Your Honor, because this has happened quite a bit in Chicago where what do you do with these tenants who had nothing to do with the mortgage on the property? That is a little bit different, Your Honor, and I would suggest that it's completely distinguishable from the case at hand where Deborah May actually had the mortgage. She's the one that didn't pay. She's the one that abandoned the property and walked away from it. I think it's important to know that the moment the order of possession comes through, and that's separate from the order of foreclosure. When the order of possession comes through, giving rights to the bank, at that point, yes, Your Honor, any material, any property left in there is interfering with the bank's right of possession. They're going to try and sell that building. They have no duty to rent a storage unit, and, Your Honor, if they did, think of the possibilities there. It may cost hundreds, thousands of dollars to store this property, and how long should they do it? Should they do it for five years or ten, maybe 15 years, waiting for this person who walked away on their mortgage without leaving a forwarding address? Maybe they will call. And I would like to just make one thing, last point, is that the entire case against my clients is based on the necessary precondition for the action for conversion is that the foreclosure action and the order of possession were somehow fraudulently obtained. Those orders are not before this court. Plaintiff tried to file the motion to vacate those orders and withdrew it. Now he is trying or she is trying to get this court to rule that those orders were fraudulently obtained without attacking the judgments themselves, and, Your Honor, I would suggest that that's improper. The judgment, the order of possession remains. If they don't affect the validity of the order, and I certainly don't disagree with you on that, can there not be some evidence of the delay in making the request or the reason for the delay in making the request for the property when Mr. May allegedly called us? Well, Mr. May contacted us long after the possession had been granted. No, I understand that, but I guess my question is if they had no personal notice of the foreclosure, and they didn't find out about it until they came up with actual notice somehow, or we don't know, of course, because the facts aren't out, but if that were the case, that they found out about it in April of 2001, and that's when they called, would the fact that they didn't know about it, the fact that they didn't have personal notice, affect the delayed request? The ultimate result, no, I don't believe it would, and the reason I say that is that... I'm sorry, you have to make other factual findings that they should have maybe gone to Milford and looked them up, found them that way, or... And what he's trying to do is ask this court to find the foreclosure judgment and the order of possession to have been fraudulently obtained. Well, you can only do that one way, by filing a motion to vacate those orders. You attack those orders directly. Right now, those orders are good law. The judge entered them, he saw service by publication, and entered those orders. Now, we have no choice but to presume that those orders are valid unless they attack them directly. They can't come from a completely separate action for conversion and ask this court to presume that they didn't know or that the service was inappropriate. Thank you. Thank you. Well, first of all, he's dead wrong on attacking a judgment when there wasn't personal service, because if you have a false affidavit of publication, the judgment is void. And he says... That wasn't really my question. I'm just... I'm not... Sure. I'm not going that deeply into the digging here. Digging, whatever. What I wanted to find out, and maybe I should have your thoughts on this, too, is whether it's some indicia of why he called in April after possession was granted in February or whatever, or they took possession in February. Yes, that's exactly what happened. Appendix 4 shows the false affidavit of publication in the now living in Milford. Counsel for Bank 1 suggested that the repossession involved something other than... Some other company other than Bank 1's. No, no. C-136, it was Bank 1. They knew their address. Let me ask you, Mr. Stigol. Yes. This property worth a half a million or more than a million dollars, I guess, in two different places, it has different values. It was over a year before that request was made. Surely she left the material in there, we know that, in the house when she left it after three months. If a half a million dollars, a million dollars worth of property sitting in that house for a year... Well, it's her house. She can do it. I mean, she had no indication that something might happen, that she took out a mortgage and the mortgagee might not be thrilled by nonpayments? Well, fine. That she has to get actual notice of the foreclosure, which she didn't get. So she didn't know. I mean, that gets into evidence, but there were some inquiries about back and forth between the lender. But, I mean, actually it wasn't the lender because nobody knows the lender, it's some service company. But we're in computer world. You can't call somebody up and talk to them anymore, Your Honor, here. I mean, these are all assigned and you don't know where they're going. This isn't the old family bank or small town bank here. But beyond all that is, it was her property, she owned the real estate. She had a right to know that it was being subject to foreclosure. Well, the records show she had no knowledge of that because we got the false affidavit here. We also have the fact that bank one knew her address. So when they take repossession of the real estate, or even before that, they should have sent a notice to her actual address, the foreclosure could, the fact that they didn't contest that they owed the money on the real estate and you could have it to the bank doesn't mean that that's somehow a finding that you got it right, that we've abandoned our personal property because we didn't come in earlier. You hit precisely the point. The delay is they didn't know anything about the foreclosure and that explains why they waited the 77 days. And she had no responsibility in this at all? Well, possibilities are a lot, but the law is she owns it. No responsibility. Well, I'm sorry. Yeah, my response to that is the responsibility is you don't, conversion's theft. You don't take property you don't owe. And what banks all do, responsible people, except when you package these things out, is give notice and say we've got the property here, come get it. They had the address. All they had to do was check their records or look at the summons and say where they actually live or run it. And the implication that somehow she hid, didn't leave a foreign address, the sheriff knew where she was. Because it's in the appendix here, you can see, now lives in Milford. And Bank One knew, so how would they know Bank One was foreclosing on a mortgage when they took their personal repossession of their automobiles on June 7th of 2000? Yeah, you're right. You have a right to keep, you should keep notice of what's going on, but when somebody doesn't give you notice and then they come in and say that, oh, well, you didn't keep, you've got to ignore everything we did, you had the false affidavit of service and we didn't serve you and we didn't ever give you actual notice and we knew where you were, that's fine, we forfeit it. As far as the cases, it's in the reply brief. I cite a wealth of cases, common law cases that say you don't own the personal property, you've got a duty to preserve it and take reasonable efforts. I had about six or eight citations. That's what the duty here is. Taking the allegations is true. There certainly wasn't an abandonment with four demands with the false affidavit of publication, no personal service at the summons. So every notice they sent in that foreclosure might as well have been thrown in the Illinois River in Havana because it wasn't going to where they were and they knew where they were. The other thing I would say is, is their position really that a bank forecloses on a quarter of a million dollar home, which this was, is that they can immediately just take the stuff and throw it out in the snow? Counsel, just one minute. There's no duty to preserve it at all in an attempt to allow the owners to come get it? I have a question, kind of following on that, but by the same token, shouldn't your client say she has no duty to preserve her property and say it's her house? I don't see how you can say after only making three payments that she has a reasonable expectation that that's going to remain her house. Well, first of all, she didn't know who the lender was. I mean, keep in mind, a bank once foreclosed on a mortgage that they didn't know and they didn't have his assignment, so she didn't know who the lender was. So she didn't know who to contact. That's the other problem. She didn't have a payment book? Well, but if you've got problems with payments, they ultimately went in bankruptcy. You've got to know somebody to talk to. And you say, well, you don't know this could happen. Well, until, I mean, isn't the law that you own property until you get service of process and notice that something's going to go to take it? I mean, are we just going to throw that out and ignore the false affidavit and say, well, you should have kept track of this even though you didn't make payments, so you forfeit your personal property and they get to take it? Now, I mean, she didn't get notice of what was going on. She has a right. That's her property. She doesn't have to be there. Who knows what she did with it? But legally, she doesn't have to do anything to that house to preserve the personal property. Counsel's time. Does that answer the question? Well, I guess, yeah. Well, I don't know. Please, I mean, I guess we're trying to use comparative fault here. We're an intentional tort. The intentional tort is, and conversion is limited. It's not do you intend to do harm. Do you intend to take control, possession and control of the property over someone who owns it? Well, they intended to do that. So there's no contributory negligence defense to an intentional tort. It's that you own it and someone who takes it is a thief. And, you know, whatever their motivations, they don't get charged criminally, but civilly they took the plaintiff's property. And so I submit that comparative fault and contributory negligence don't have anything to do when you take someone's property you know not your own. Now, I certainly agree, and in preparing this, is property can be abandoned and is all the time. If they had sent the notice to the maize at the address in Milford a reasonable time, 30 days, they got it. They can throw it in the garbage, but they never did that. And they knew it wasn't theirs. Also, there's this talk in the record, if I may add. I think you've answered it. Yeah, I've answered it. I'm sorry. I'll be back. Thank you. Thank you, counsel. The panel will adjourn and take this case under advisement and rule with dispatch post-haste. On this matter, now new panel.